UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUDDEN VALLEY SUPPLY LLC, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:13CV53 JCH |
| ) | |
| NEAL P. ZIEGMANN, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Motion to Dismiss," ECF No. 11) and Motion for Transfer of Venue to the Northern District of Iowa ("Motion to Transfer," ECF No. 13), both filed on March 12, 2013. Both motions are fully briefed and ready for disposition.

**BACKGROUND**[1]

Plaintiff Sudden Valley Supply LLC ("Plaintiff" or "Sudden Valley") is a Missouri corporation with its principal place of business in Warrenton, Missouri. (Complaint, ECF No. 1, ¶ 2). Defendant Neal Ziegmann ("Defendant" or "Ziegmann") is a citizen of Iowa and resides in Lake View, Iowa. (Id., ¶ 3). Sudden Valley is entirely owned and operated by Carlis Stephens. (Id., ¶ 2). Sudden Valley manufactures and sells dog-proof animal traps based on Stephens's creation of, and subsequent improvements to, dog-proof animal traps with "push-pull" triggers. (Id., ¶ 10). Stephens operates Sudden Valley at his property in Warrenton, Missouri. (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Venue ("Memo

---

[1] Many of the facts in the Court's background section are taken directly from Plaintiff's Complaint. Defendant has not yet filed an Answer to Plaintiff's Complaint.

in Opposition - Dismiss"), ECF No. 17, p. 2). Stephens began improving existing dog-proof "single-action-trigger" animal traps in 2006, resulting in the creation of a push-pull trigger system in late 2006 or early 2007. (Complaint, ¶¶ 7, 8). Sudden Valley was creating, selling, and demonstrating dog-proof animal traps with push-pull triggers as early as 2007. (Id., ¶ 9).

On May 4, 2009, a provisional application for a patent was filed for a "Raccoon Trap," and a patent for this invention was subsequently issued to Defendant on July 31, 2012. (Id., ¶ 11). The claimed subject matter of this patent pertains to a push-pull mechanism for a raccoon trap. (Id., ¶ 13).

According to Plaintiff, Stephens first met Defendant at the National Trappers' Association's ("NTA") annual national convention in Columbia, Missouri, on August 4, 2011. (Memo in Opposition - Dismiss, p. 3). Stephens visited Defendant's booth and told him that his product was an exact copy of Stephens's invention. (Id.). Defendant responded that "he beat [Stephens] to it" and that he was "ahead of [Stephens] on the patent." (Id.). Stephens told Defendant that his patent was "no good" because Stephens had been creating, demonstrating, and selling traps with push-pull triggers before Defendant applied for a patent. (Id.).

On August 10, 2012, counsel for Defendant sent Plaintiff a cease and desist letter accusing Plaintiff of infringing Defendant's patent. (Complaint, ¶ 14). The letter provides, in part, as follows: "If a lawsuit is necessary to force you to stop, we will seek the full amount of monetary damages and other relief to which our client is entitled...." (Letter to Stephens, ECF No. 1-1, p. 2).

Plaintiff states Stephens next saw Defendant at the Missouri Trappers' Association ("MTA") Fall Rendezvous at the Sand Spring Resort near Bennett Spring State Park in Missouri in September 2012. (Memo in Opposition - Dismiss, p. 3). Defendant was promoting and selling his trap as a patented product at the Fall Rendezvous. (Id.). According to Plaintiff, at least six different

customers or potential customers approached Stephens at the Fall Rendezvous and asked him what was going on between him and Defendant. (Id.). Stephens believed these individuals were referring to Defendant's patent claims and the dispute between Defendant and Plaintiff as to who was the inventor of the push-pull trigger. (Id., pp. 3-4).

Plaintiff also asserts that an associate of Defendant's has traveled to Missouri to sell or deliver Defendant's product to a resident of Jamesport, Missouri. (Id., p. 4).

Plaintiff filed this action in this Court on January 10, 2013, requesting a declaratory judgment that Defendant's patent is invalid and not infringed by Plaintiff's product. Defendant filed a patent infringement action against Plaintiff in the United States District Court for the Northern District of Iowa on January 16, 2013. (Memorandum in Support of Defendant's Motion for Transfer of Venue to the Northern District of Iowa ("Memo in Support - Transfer"), ECF No. 14, p. 6). As noted above, Defendant filed its Motion to Dismiss and Motion to Transfer on March 12, 2013. Defendant alternatively argues that this Court lacks personal jurisdiction over him, that venue is improper, and that this action should be transferred to the Northern District of Iowa.

## DISCUSSION

**I.     Motion to Dismiss**

    **A.     Personal Jurisdiction**

Defendant argues that, as an Iowa resident, his contacts with the State of Missouri are insufficient to subject him to personal jurisdiction in Missouri. Plaintiff counters that Defendant has the requisite minimum contacts with Missouri to subject him to specific jurisdiction in Missouri and that Defendant's contacts with Missouri have been systematic and continuous enough to also subject him to general jurisdiction in Missouri. Since the Court finds Defendant has sufficient contacts with

Missouri to establish specific jurisdiction, the Court need not analyze whether Defendant's contacts also establish general jurisdiction.

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes Defendant to challenge the Complaint for "lack of personal jurisdiction." Because an action for declaratory judgment of noninfringement is "intimately related to patent law," the Federal Circuit law of personal jurisdiction governs. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006).

Where a defendant is not subject to general jurisdiction in the forum state, a district court may nonetheless exercise specific jurisdiction over the defendant if the cause of action "arises out of" or "relates to" the defendant's in-state activity. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985). In determining whether specific jurisdiction may be exercised over a non-consenting out-of-state defendant, a district court must undertake a two-part inquiry. First, the state long-arm statute must permit service of process on the defendant. See FED.R.CIV.P. 4(e), 4(k)(1)(A). Second, the exercise of personal jurisdiction must satisfy due process requirements. Burger King, 471 U.S. at 474-76. The Due Process Clause requires that there exist sufficient "minimum contacts" such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Id. at 476-78.

Missouri's long-arm statute extends to the bounds of the Due Process Clause. See Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334, 1344 (Fed. Cir. 2006) (citing State ex rel. K-Mart Corp. v. Holliger, 986 S.W.2d 165, 167–68 (Mo. 1999)). Therefore, the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." Avocent Huntsville Corp. v. Aten Int'l. Co., Ltd., 552 F.3d 1324, 1329 (Fed. Cir. 2008).

Under Federal Circuit law, personal jurisdiction exists if "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Breckenridge, 444 F.3d at 1363 (citation omitted). Defendant bears the burden of proving the third element and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in Burger King [Corp. v. Rudzewicz, 471 U.S. 462, 476–77 (1985)]." Breckenridge, 444 F.3d at 1363 (internal quotations and citation omitted). These five factors are as follows: the burden on the defendant, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 476-77.

In an ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. Avocent, 552 F.3d at 1332. "But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods ... [such as] the threat of an infringement suit.'" Id. (quoting Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360 (Fed. Cir. 1998)). Thus, the nature of the claim in a declaratory judgment action is "to clear the air of infringement charges." Id. (quoting Red Wing Shoe, 148 F.3d at 1360). Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises

out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. <u>Id.</u> The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee "purposefully directed [such enforcement activities] at residents of the forum," and the extent to which the declaratory judgment claim "arises out of or relates to those activities." <u>Id.</u> at 1332-33 (quoting <u>Breckenridge</u>, 444 F.3d at 1363).

Here, the Court finds it has specific personal jurisdiction over Defendant. Under the first prong of the specific jurisdiction analysis, Defendant has purposefully directed his enforcement activities at Missouri residents by attending the NTA and MTA conventions in Missouri, engaging in discussions with Plaintiff and conference attendees regarding the validity of his patent, selling his product in and delivering his product to Missouri, and sending an infringement letter to Plaintiff in Missouri. See <u>Campbell Pet Co. v. Miale</u>, 542 F.3d 879 (Fed. Cir. 2008) (personal jurisdiction found where the defendant sent infringement letter to resident in the forum and communicated the alleged infringement to third parties in the forum); <u>Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.</u>, 142 F.3d 1266 (Fed. Cir. 1998) (personal jurisdiction found where the defendant sent infringement letter, contracted with third party to sell product, had two sales representatives, and sold a substantial amount of product in the forum). Under the second prong of the specific jurisdiction analysis, Plaintiff's claim for noninfringement relates to Defendant's previously mentioned enforcement activities. Finally, under the third prong, Defendant has not presented a compelling case that jurisdiction in this Court would be unreasonable under the factors enumerated in <u>Burger King</u>.

**B.     Improper Venue**

Defendant also argues venue in this Court is improper since Defendant is not subject to personal jurisdiction in the Eastern District of Missouri and since no substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Rule 12(b)(3) of the Federal

Rules of Civil Procedure provides that a party may move to dismiss an action when the action is not filed in the proper venue. The moving party has the burden of establishing that venue is improper. Transocean Group Holdings Pty. Ltd. v. South Dakota Soybean Processors, LLC., 505 F.Supp.2d 573, 575 (D.Minn. 2007). Venue in a declaratory judgment action for patent invalidity and noninfringement is governed by the general venue statute, 28 U.S.C. § 1391(b). Emerson Elec. Co. v. Black & Decker Mfg., 606 F.2d 234, 238 (8th Cir. 1979).

> Section § 1391(b) provides as follows:
>
> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As noted above, the Court finds it has personal jurisdiction over Defendant and that Defendant has engaged in patent enforcement activities in Missouri. Personal jurisdiction and venue, however, are separate questions. See Wells' Dairy Inc. v. Estate of Richardson, 89 F.Supp.2d 1042, 1052 (N.D. Iowa 2000).

Here, the Court finds that venue is proper. Plaintiff received Defendant's cease and desist letter in the Eastern District of Missouri, and Plaintiff produces the allegedly infringing product in the Eastern District of Missouri. Additionally, as noted above, the Court finds Defendant has directed patent enforcement activities at residents of Missouri. The Court finds these allegations sufficient to establish jurisdiction in the Eastern District of Missouri. See Wells' Dairy, 89 F.Supp.2d at 1053-54 (finding venue was proper in declaratory judgment action for patent invalidity where the plaintiff received cease and desist letter and engaged in substantial activities in the forum

state, and where the allegedly infringing product was manufactured in the forum judicial district). Defendant's Motion to Dismiss must therefore be denied.

**II.     Motion to Transfer**

Defendant also argues that this action should be transferred to the Northern District of Iowa. 28 U.S.C. § 1404(a) governs the ability of a federal district court to transfer a case to another district. This provision states as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] Id. In considering a § 1404(a) motion, the Court gives great weight to the plaintiff's choice of a proper venue and will only disturb that choice upon a clear showing that the balance of interests weighs in favor of the movant's choice of venue. Anheuser-Busch, Inc. v. City Merchandise, 176 F. Supp.2d 951, 959 (E.D. Mo. 2001) (citations omitted). This court has articulated a series of factors that a court should consider in evaluating a motion to transfer: 1) the convenience of the parties; 2) the convenience of non-party witnesses; 3) the availability of judicial process to compel testimony from hostile witnesses; 4) the governing law; 5) relative ease of access to sources of proof; 6) possibility of delay and prejudice if a transfer is granted; and 7) practical considerations of cost and efficiency. Id. (citation omitted); see also Terra Int'l., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). Further, "[t]he 'primary, if not most important' of these interests is the convenience of the witnesses." Anheuser-Busch, 176 F.Supp.2d at 959 (quoting May Dept. Stores Co. v. Wilansky, 900 F.Supp. 1154, 1165 (E.D. Mo. 1995)).

---

[2] Plaintiff has not disputed that this action could have been brought in the Northern District of Iowa.

Upon consideration, the Court finds the balance of factors favors denying Defendant's Motion for Transfer of Venue. First, as to the convenience of the parties, the Court finds this factor to be neutral--while Defendant prefers to litigate in Iowa, Plaintiff prefers Missouri, its principal place of business and the location of its production facilities. Next, with respect to the "primary interest" of the convenience of non-party witnesses, the Court again finds this factor to be neutral, as both parties' witnesses are located in their respective states. The Court finds consideration of the remaining factors does not change this analysis, as it would ultimately be easier for Defendant to litigate this matter in Iowa and easier for Plaintiff to litigate this matter in Missouri. The Court finds Defendant has not made a clear showing that the balance of interests weighs in favor of litigation in the Northern District of Iowa, and the Court will not disturb Plaintiff's choice of forum in favor of Defendant's later-filed action. Defendant's Motion to Transfer must therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Transfer of Venue to the Northern District of Iowa (ECF No. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Fed.R.Civ.P. 16 Scheduling Conference and 26(f) Conference of the Parties (ECF No. 22) is **DENIED** as moot.

Dated this <u>14th</u> day of May, 2013.

/s/Jean C. Hamilton<br>
UNITED STATES DISTRICT JUDGE