## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| SUDDEN VALLEY SUPPLY LLC, | ) |
| Plaintiff, | ) No. 4:13-CV-53 RLW |
| v. | ) |
| NEIL P. ZIEGMANN, | ) |
| Defendant. | ) |
| NEIL. P. ZIEGMANN and N.P.Z., INC., | ) |
| Counterclaim-Plaintiffs, | ) |
| v. | ) |
| SUDDEN VALLEY SUPPLY LLC, | ) |
| Counterclaim-Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Sudden Valley Supply LLC's (SVS) Motion for Partial Summary Judgment of Non-Infringement (ECF No. 85), Counterclaim-Plaintiffs Neil P. Ziegmann and N.P.Z., Inc.'s Motion for Partial Summary Judgment (ECF No. 88), Neil P. Ziegmann and N.P.Z., Inc's Motion to Exclude the Opinions and Testimony of David C. Hastings (ECF No. 90), and Defendant/Counterclaim-Plaintiffs Neil P. Ziegmann and N.P.Z., Inc.'s Motion for an Order Establishing the Order of Proof at Trial (ECF No. 97). These matters are fully briefed and ready for disposition.

## BACKGROUND

NPZ[1] is the owner of U.S Patent No. 8,230,642 (the '642 Patent). The '642 Patent is based on a provisional patent application, originally filed on May 4, 2009. The '642 Patent was examined before the PTO. The Patent Examiner, Kathleen Iwasaki, initially rejected Mr. Ziegmann's claims, finding that the claims were anticipated by Patent No. 6,658,787 ('787), which issued to Gary Bonnot (whose commercial products are Lil' Grizz Get'r, hereinafter referred to "Lil' Grizz"). Examiner Iwasaki later withdrew her rejection of the '642 Patent, finding that two-way trigger and latch system was not anticipated by prior patents. The patent issued on July 31, 2012.

Claims 1-5 and 9-17 of the '642 Patent are at issue in the present litigation.[2] These claims relate to a dog-proof raccoon trap that includes a housing with a restraint that is activated by a two-way trigger and latch system, designed to prevent bait theft. The two-way trigger system catches a raccoon when it pushes down or pulls up on the trigger. Because the trap catches the raccoon coming or going, bait theft (where the raccoon takes the bait without the trigger firing) is virtually eliminated.

On January 10, 2013, SVS filed a declaratory judgment action seeking a finding of invalidity and noninfringement regarding the '642 Patent. On May 28, 2013, NPZ filed its answer and counterclaim asserting infringement of the '642 Patent against SVS, alleging that

---

[1] NPZ is used to refer to Neil P. Ziegmann and N.P.Z., Inc. both individually and collectively.

[2] SVS states that "as a housekeeping matter, NPZ originally asserted infringement of Claims 6 and 18-19 but has withdrawn those claims. ... SVS asks the Court to formally acknowledge NPZ's acquiescence, and enter summary judgment of non-infringement as to those claims." (ECF No. 86 at 3). In its motion, NPZ states that "Claims 1-5 and 9-17 of the '642 patent are at issue in the present litigation." (ECF No. 89 at 1). Therefore, it seems that both parties agree that Claims 6 and 18-19 are not at issue in this case and the Court enters judgment of non-infringement in favor of SVS as to those claims.

SVS's accused device—the "Coon Dagger" raccoon trap—infringes claims 5-6 and 9-10 under the doctrine of equivalents.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

### I.  SVS Motion for Partial Summary Judgment of Non-Infringement[3]

"Under the "all elements" rule, the accused device must contain each limitation of the claim, either literally or by an equivalent, to be infringing." *TecSec, Inc. v. Int'l Bus. Machines Corp.*, 731 F.3d 1336, 1352, n.2 (Fed. Cir. 2013) (citing *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,* 529 F.3d 1364, 1379 (Fed. Cir. 2008)). "Most often, the 'all elements' rule serves to prevent vitiation of a claim limitation when the infringement theory is based on the doctrine of equivalents[.]" *TecSec, Inc.*, 731 F.3d at 1352, n.2. "Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'" *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001)(quoting *Amhil Enters., Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562, 38 USPQ2d 1471, 1476 (Fed. Cir. 1996)). However, "[e]ven though a device does not literally infringe the claim of a patent, a patentee may invoke the doctrine of equivalents to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result.'' *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 847 (Fed. Cir. 1984) (internal quotations omitted); *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). A finding of equivalency is factual determination. *Radio Steel & Mfg. Co.*, 731 F.2d at 847.

---

[3] SVS's present motion is for partial summary judgment and does not address asserted claims 1-4.  Accordingly, SVS's alleged infringement of claims 104 remains an issue for trial even if the Court were to grant SVS's Motion.  (ECF No. 101 at 1, n.1).

The court applies two articulations of the test for equivalence:

> Under the insubstantial differences test, "[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." ... Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it "performs substantially the same function in substantially the same way to obtain substantially the same result."

*Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008)(internal citations omitted). "[K]nown interchangeability is only one factor to consider in a doctrine of equivalents analysis. It aids the fact-finder in assessing the similarities and differences between a claimed and an accused element." *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1382 (Fed. Cir. 2006). "An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950).

Here, Claims 1, 5 and 11 of the '642 Patent are in independent form, while Claims 2-3, 6, 9-10, and 12-19 depend from those claims. Claim 5 recites the claim element "tubular body," and Claim 11 recites the claim element "tubular housing." As dependent claims, Claims 6 and 9-10 incorporate the "tubular body limitation", while Claims 12-19 incorporate the "tubular housing limitation." Following a *Markman* hearing, the Court, agreeing with SVS's position, held that "tubular" meant "hollow and cylindrical."

On April 4, 2014, pursuant to Local Patent Rules 3-1 and 3-7, NPZ served its Disclosure of Asserted Claims and Final Infringement Contentions ("Final Contentions") on SVS. NPZ contended that Claims 5 and 9-17 were infringed under the Doctrine of Equivalents "based upon this Court's claim construction of the term 'tubular' meaning 'hollow and cylindrical." On May 9, 2014, NPZ served the opening report of Neil P. Ziegmann, the patentee in this case, as its expert on infringement issues. In his report, Mr. Ziegmann opined that, as to the "tubular body"

limitation of Claim 5, and the "tubular housing" limitation of Claim 11, it was his opinion that the Coon Dagger includes that element under the Doctrine of Equivalents, not literally. Mr. Ziegmann applied the doctrine of interchangeability and function-way-result test. SVS argues that NPZ cannot demonstrate that Claims 5 and 9-17 were infringed under the Doctrine of Equivalents because it has not demonstrated how the body of the Coon Dagger met the "function, way, result" test, or how it was "interchangeable" with a cylindrical central body.

## A. Interchangeability

With respect to the issue of interchangeability, SVS argues that NPZ's expert and the patentee, Neil P. Ziegmann failed to cite to any evidence showing independent research or testing in which the housing/body of the Coon Dagger was found to be interchangeable with a hollow and cylindrical body. (ECF No. 86 at 6). In addition, Mr. Ziegmann did not explain how he would "interchange" those two structures without having to modify other parts of the trap, such as the restraint. (*Id.*)

In response, NPZ contends that the insubstantial differences test shows that disputed issues of material fact exist regarding equivalency. "Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.'" *Voda*, 536 F.3d at 1326 (quoting *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)). NPZ contends that it has set forth facts show that only insubstantial differences exist between the Coon Dagger's prism body/housing and the "tubular body/housing" recited in claims 5 and 11 of the '642 Patent. (ECF No. 101 at 5). NPZ relies on the expert testimony of the inventor of the '642 Patent, Mr. Ziegmann, a person of ordinary skill in the art, who contends that different tubular shapes for the body/housing were interchangeable at the time of the infringement. (*Id.*) NPZ claims that Mr. Ziegmann cited

evidence of independent experimentation showing that a prism-shaped and a tubular-shaped body/housing were known to be interchangeable at the time of infringement. (ECF No. 101 at 6). NPZ further claims that it presented evidence that no significant changes in the trap would be required to interchange the different housing types. (ECF No. 101 at 6-7).

"The inquiry of '[i]nfringement, either literal or under the doctrine of equivalents, is a question of fact.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1338 (Fed. Cir. 2014)(quoting *Brilliant Instruments, Inc., v. GuideTech, LLC,* 707 F.3d 1342, 1344 (Fed. Cir. 2013)). Only "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39, n.8 (1997). The Court finds that Mr. Ziegmann's expert report presents an issue of material fact as to interchangeability. Mr. Ziegmann has provided evidence that the two types of housing bodies were known to be interchangeable at the time of the alleged infringement. (ECF No. 102-10, ¶42). While SVS and its expert, Mr. Stephens, have provided countervailing evidence, that only serves to highlight that issues of fact exist which must be determined by the jury. The Court denies summary judgment on this basis.

### B. Function-Way-Results Test

"[U]nder the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Voda*, 536 F.3d at 1326 (citing *Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1209–10 (Fed. Cir. 2001)).

SVS argues that Mr. Ziegmann's purported application of the "function-way-result-test" failed to cite to any portion of the specification or prior art for his determination that the function

of cylindrical body/housing was "to provide an enclosure for the bait and the trigger, and therefore to trap—in combination with the restraint—the animal's paw." (ECF No. 86 at 7). SVS contends that Mr. Ziegmann did not identify why the cylindrical shape of the body/housing was necessary for the identified function or how the shape of the body/housing related to the identified function. (*Id.*) In sum, SVS contends that Mr. Ziegmann "did not provide any analysis or discussion comparing the function, way, or result of a cylindrical shape to the rectangular-prism shape of the Coon Dagger." (*Id.*) In contrast, SVS states that Carlis Stephens' rebuttal expert report identifies several functional benefits of having a rectangular-prism housing, including eliminating problems with mud, ice, and debris being stuck in the housing and interfering with trap operations, and preventing flooding the trap. (*Id.*) In addition, Mr. Stephens stated that the housing shape also "allows for the use of a V-shape restraint, which, in combination with the housing, creates a wedge design that will hold an animal's paw much tighter." (*Id.*)

In response, NPZ contends that it has set forth specific facts showing that there is a genuine issue for trial regarding whether the Coon Dagger's body/house is equivalent to claims 5 and 11 of the '642 Patent:

> [u]nder the function-way-result test, the function of the cylindrical body/housing of the '642 patent is to provide an enclosure for the bait and the trigger, and therefore to trap—in combination with the restraint—the animal's paw. The way in which it does that is to provide a peripheral wall which forms the enclosure and provides a surface against which the animal's paw may be trapped. The result is enclosing the bait and trigger, while also trapping the animal's paw between the restraint and peripheral wall of the housing. Support can be further found in col. 3, ll. 35-39 and FIGS 1, 5, and 6 of the '642 patent.

(ECF No. 102-10, ¶37). Mr. Ziegmann found that "even though substituting a square-tubular housing for a cylindrical-tubular housing may require secondary changes to the apertures and

openings of the housing, the function/way/result remains the same: enclosing the bait and trigger while trapping the animal's paw between the restraint and peripheral wall of the housing." (ECF No. 102-10, ¶43).

The Court also holds that an issue of material fact exists as to doctrine of equivalents with respect to application of the function-way-result test. The Court finds support in the record that the principal function of the body/housing of the '642 Patent is for enclosure of the bait and trigger and restraint of the animal's paw. Both parties agree that this feature is present in both types of housing. Based upon this primary function, the Court holds that genuine issues of material fact remain and preclude entry of summary judgment. *See Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 942 (Fed. Cir. 1983)("it was entirely proper for the court to conclude that the identity of primary function constitutes substantial identity of function for purposes of the doctrine of equivalents").

## C. Vitiation

"Whether an element of the accused device is equivalent to a claim limitation depends on whether the substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.'" *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998)(quoting *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997)). "If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law." The Federal Circuit recently determined:

"Vitiation" is not an exception to the doctrine of equivalents, but instead a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element." If no

reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents.

*Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013)(quoting

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012)):

SVS argues that NPZ's doctrine of equivalents is "an attempt to vitiate the term 'tubular' from Claims 5-6 and 9-19," which is a "clear shape limitation." (ECF No. 86 at 9); *see Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006)(citing *Tanabe Seiyaku Co. v. Int'l Trade Comm'n*, 109 F.3d 726, 732 (Fed. Cir. 1997)("A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents."). SVS argues that NPZ elected to specifically claim a "tubular body" in Claims 5-6 and 9-10, and a "tubular housing" in Claims 11-19, thereby excluding other shapes from the claim. (ECF No. 86 at 10). SVS notes that NPZ used the generic term "housing" without a shape limitation in Claim 1, which indicates that NPZ included the term "tubular" for a reason and such exclusion should not be vitiated from the reading of the patent.

NPZ argues that application of the doctrine of equivalents would not vitiate the "tubular" limitation in claims 5 and 11 of the '642 Patent because "a reasonable jury could determine the square-tubular body/housing in the Coon Dagger is equivalent." (ECF No. 101 at 11). That is, under the doctrine of equivalents, the Court must examine "the fundamental question of whether there is a genuine factual issue that the accused device, while literally omitting a claim element, nonetheless incorporates an equivalent structure." *Deere & Co.*, 703 F.3d at 1357. NPZ contends that any description of the "tubular" limitation being "cylindrical" in the '642 Patent is "purely incidental" to the invention described. (ECF No. 101 at 13). NPZ notes that "tubular" in claims 5 and 11 of the '642 Patent is never defined in the claims, nor are the terms "cylindrical," "circle," or "circular" even mentioned in the patent. (*Id.*) NPZ further argues that it never made

a "clear and unmistakable surrender" of a square-tubular body/housing during prosecution of '642 Patent; that is, NPZ never used the "tubular body/housing" limitation in support of patentability. (*Id.*) *See Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002)(quoting *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999)("To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter.'"). Likewise, NPZ argues that it never touted the advantages of a cylindrical as compared to square tubular body/housing, nor argued that square-tubular shapes were inferior to a cylindrical design. (ECF No. 101 at 14). *See Ranbaxy Labs. Ltd. v. Abbott Labs.*, No. 04 C 8078, 2005 WL 3050608, at *20 (N.D. Ill. Nov. 10, 2005)(citing *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1374-75 (Fed. Cir. 2003))("Specific exclusion is only properly applied where the patentee clearly and specifically has indicated an intent not to cover the claimed equivalent.").

The Court holds that summary judgment is not appropriate because it cannot hold as a matter of law that NPZ's theory of equivalence would "entirely vitiate a particular claim element." *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997). The Court holds that an issue of fact exists as to whether "tubular" is a specific limitation of NPZ's claims. NPZ has come forward with evidence that it has never relied on the "tubular" limitation and has never argued that the "tubular" design has any advantage over other designs. As a result, the Court denies SVS's motion for partial summary judgment because SVS has not demonstrated as a matter of law that NPZ's theory of equivalence would vitiate a particular claim element.

## II.    NPZ Motion for Partial Summary Judgment

In NPZ's Motion, it seeks summary judgment that the asserted claims of the '642 Patent are not invalid nor barred by the doctrine of unclean hands. In addition, NPZ requests summary judgment that, contrary to SVS's position, 51 claim terms are not indefinite.

**A. Invalidity**

SVS has asserted the '642 Patent is invalid through three ways. First, under 35 U.S.C. §102, SVS asserts the '642 Patent's claims are invalid as anticipated because SVS's owner, Carlis Stephens, or Jack Hill invented the animal trap claim in the '642 Patent before NPZ.[4]  Second, SVS asks that the allowance of the '642 Patent by the United States Patent and Trademark Office (the PTO) be overturned and that the claims of the '642 Patent be found to be invalid on the grounds of obviousness pursuant to 35 U.S.C. §103.

1. Anticipation

A patent claim is anticipated if each and every limitation is found in a single prior art reference. *OSRAM Sylvania, Inc. v. Am. Induction Technologies, Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012)(citing 35 U.S.C. § 102). Patents are presumed to be valid and invalidity must be proven by clear and convincing evidence. *OSRAM Sylvania, Inc. v. Am. Induction Technologies, Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012)(citing *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243, 180 L. Ed. 2d 131 (2011)). "A single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002)(citing *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987)).

Anticipation, though a question of fact, may be resolved on summary judgment if no genuine issue of material fact exists. *OSRAM Sylvania, Inc. v. Am. Induction Technologies, Inc.*,

---

[4] SVS also relies on the purported prior invention by Mr. Stephens as the basis for its defense of unclean hands.

701 F.3d 698, 704 (Fed. Cir. 2012)(citing *Ormco Corp. v. Align Tech., Inc.,* 498 F.3d 1307, 1319 (Fed. Cir. 2007)). "Summary judgment is proper if no reasonable jury could find that the patent is not anticipated." *Zenith Elecs. Corp. v. PDI Commun. Sys.,* 522 F.3d 1348, 1357 (Fed. Cir. 2008).

SVS asserts that the '642 Patent was anticipated by the inventions of Jack Hill and SVS's Carlis Stephens. NPZ maintains that the uncorroborated testimony of Mr. Hill and Mr. Stephens are insufficient to invalidate the '642 Patent due to anticipation.

    a. Jack Hill

Mr. Hill was a trapper who submitted a declaration and gave deposition testimony that he modified a Lil' Grizz trap in 2006 to include a two-way trigger system. Mr. Hill admitted he had no paper proof that he modified the trap in 2006. Further, NPZ asserts that Mr. Hill's purported modified traps do not corroborate his invalidity claim. NPZ notes that no one besides Mr. Hill attests to seeing the traps prior to May 4, 2009; no one testified to selling or purchasing the device before May 4, 2009; and no one testified that the device existed prior to May 4, 2009, except for Mr. Hill. Thus, NPZ contends that Mr. Hill's uncorroborated testimony is insufficient to invalidate a patent. (ECF No. 89 at 6-7); *Finnigan Corp. v. United States Int'l Trade Comm'n,* 180 F.3d 1354, 1366 (Fed.Cir.1999)("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony."). "The Supreme Court recognized over one hundred years ago that testimony concerning invalidating activities can be 'unsatisfactory' due to 'the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury.' " *Id.* (quoting *The Barbed–Wire Patent,* 143 U.S. 275, 284 (1892)).

In response, SVS first argues that corroboration is not necessary for third party witnesses, such as Mr. Hill, under Federal Circuit case law. (ECF No. 103 (citing *Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1176 (Fed. Cir. 1999)("We therefore hold that corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue.").[5] In any event, SVS contends Mr. Hill's testimony is corroborated by documents and physical evidence. Mr. Hill stated that he made only one purchase of Grizz traps, which he purchased the same year he won the "Top Trap" award in 2005. Using this timing, Mr. Hill verified that he modified the Grizz trap with a two-way trigger in 2006 because he modified the trap the year after he won the Top Trap award. Mr. Hill also has a rusty trap that he claims is the Grizz trap he modified in 2006. The trap has a stamp and welding that date it from its purchase in 2005.

The Court holds that Mr. Hill's testimony, supporting documentation, and evidence provide sufficient corroboration of anticipation to allow the Court to have this issue considered by the jury. The Court notes that there are several factors that support Mr. Hill's testimony as a disinterested third party. Mr. Hill is not a party to this case. He knows Mr. Stephens only as an

---

[5] SVS argues that the *Finnigan* decision is not applicable because the Federal Circuit has made it clear that "[w]here there is direct conflict, the precedential decision is the first." *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988). SVS states that *Thomson* was decided prior to *Finnigan* and, therefore, *Thomson* controls. In addition, SVS states that because Finnigan was a panel decision, it did not have the power to alter the express holding in *Thomson* on corroboration because "prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc.*" *Newell Companies, Inc.*, 864 F.2d at 765.

acquaintance, seeing him "maybe once a year at a convention." Mr. Hill does not sell modified traps. He did not try to patent his own invention. He asserts that he modified his two-way trigger system for the Grizz trap prior to meeting Mr. Stephens. The Court further finds that Mr. Hill's Top Trap award and the rusty, modified trap both corroborate Mr. Hill's testimony.[6] The Court acknowledges that the award predates the alleged invention and does not directly address the date of Mr. Hill's purported "invention" and, likewise, that nothing about the traps demonstrates that they were modified before May 2009. (ECF No. 105 at 3-4). Nevertheless, the Court holds that the award and the traps provide circumstantial evidence to support Mr. Hill's testimony, particularly since he is a disinterested third-party with apparently no motivation for dishonesty. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005)("Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party, may corroborate."). The jury will be able to evaluate Mr. Hill's credibility and the probative value of his supporting evidence at trial. Therefore, the Court finds that an issue of fact exists as to anticipation of NPZ's '642 Patent and the Court denies NPZ's motion for summary judgment as to anticipation.

b. Carlis Stephens

As previously discussed, Mr. Stephens is the owner of SVS and both parties acknowledge that he has a strong interest in the outcome of this case. NPZ argues that his two purported corroborating witnesses (David Sutton and Dale Verts) are insufficient as a matter of law. Mr. Sutton was a life-long friend of Mr. Stephens and best man at his wedding. Mr. Sutton's testimony also differs from Mr. Stephens' testimony: Mr. Sutton claims he saw the modified Lil'

---

[6] Because the Court finds that Mr. Hill's testimony is corroborated, the Court need not address whether corroboration is required for a disinterested third party under either *Finnigan* or *Thomson*.

Grizz trap with a circle trigger in 2008 but Mr. Stephens claims he first came up with the idea for a circle shaped trigger design in October or November of 2009. (ECF No. 89 at 9-10; ECF No. 105 at 5). With respect to Mr. Verts, NPZ contends that his testimony is too specious to meet the clear and convincing standard to corroborate Mr. Stephens' prior invention. (ECF No. 105 at 5). Mr. Verts contends that he spoke with Mr. Stephens on June 19, 2008, during a Fur Takers of America (FTA) convention in Columbia, Missouri and that "[h]e **may** even have had one of this prototype triggers with him on that day." (ECF No. 89-11)(emphasis in original).

In response, SVS contends that its two witnesses sufficiently corroborate Mr. Stephens' allegations of a prior invention. SVS notes that Mr. Sutton testified that he observed the "dual-action triggering device in the Spring of 2008, describing the structure and function of the trigger. (ECF No. 103 at 8-9). Consistent with this testimony, Mr. Verts testified that he discussed modifications that Mr. Stephens was making to the Grizz Trap around that same time. (ECF No. 103 at 9).

The Court finds that the purported problems with the testimony of Mr. Verts and Mr. Sutton are credibility issues for the jury to decide. The jury will be able to weigh Mr. Sutton's relationship with Mr. Stephens as well as Mr. Verts' nondescript memory in order to determine whether they support a finding of invalidity through anticipation. The Court denies NPZ's motion for summary judgment with respect to anticipation on this ground.

2. Obviousness

"While the ultimate question of patent validity is one of law, ... the s 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966). "Under s 103, the scope and content of the prior art are to be determined; differences between the prior art

and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." *Id.*; *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1374-75 (Fed. Cir. 2011)("Through the lens of one of ordinary skill in the art, even when all claim limitations are found in prior art references, the fact-finder must not only determine what the prior art teaches, but whether prior art teaches away from the claimed invention and whether there is a motivation to combine teachings from separate references.")

NPZ contends that SVS is reasserting the same obviousness arguments that were before the PTO during examination of the application of the '642 Patent. (ECF No. 89 at 11). NPZ states that when a party reiterates arguments previously considered by the PTO, then the Court should give such evidence less weight, making it harder to meet the clear and convincing burden of overcoming the presumption of validity. (ECF No. 89 at 11-12 (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251, 180 L. Ed. 2d 131 (2011)). NPZ states that SVS has merely reiterated the patent examiner's argument that it would have been obvious to combine a multidirectional trigger from a Conibear trap with the Lil' Grizz trap (which is covered by the Bonnot patent). (ECF No. 89 at 12). NPZ asserts that the difference between the prior art and the '642 Patent's invention remains the application of a two way trigger system. (ECF No. 89 at 12). NPZ maintains that SVS cannot rely on the testimony of its expert, Mr. Hastings, because he used hindsight and failed to mitigate his hindsight by considering objective secondary evidence of non-obviousness. (ECF No. 89 at 12-13).

SVS argues that NPZ has not demonstrated SVS lacks evidence as to any of the *Graham* factors. (ECF No. 103 at 10). Rather, SVS contends that NPZ essentially admits SVS has presented its *prima facie* obviousness case, but then asks the Court to find that SVS's argument is insufficient with respect to evidentiary weight, *i.e.*, by contending that SVS's argument should be given "less weight, making it harder to meet the clear and convincing burden of overcoming the presumption of validity." (ECF No. 103 at 10-11). SVS states that its burden would have been the "clear and convincing" standard if it had moved for summary judgment; here, SVS states it must only prove the existence of a genuine issue of material fact. (ECF No. 103 at 11). In sum, SVS maintains that NPZ has in effect conceded that SVS has made a *prima facie* case of invalidity.

The Court finds an issue of material fact exists that precludes entry of summary judgment on obviousness. NPZ's motion assumes that the Court discounted the corroborating testimony and evidence of prior art by Mr. Hill and Mr. Stephens. Since the Court has found that an issue of material fact exists as to that prior art, the Court believes an issue of material fact also exists here. Likewise, NPZ acknowledges that a Court can rely on expert testimony but contends that Mr. Hastings' testimony is unreliable, as set forth more fully in NPZ's *Daubert* motion. As discussed herein, the Court denies NPZ's *Daubert* motion and, therefore, finds an issue of material fact also exists based upon the report of Mr. Hastings. As a result, the Court denies summary judgment to NPZ as to obviousness.

## B. Indefiniteness of Claim Terms

Finally, SVS seeks to invalidate the '642 Patent based upon 35 U.S.C. §112. SVS maintains that "more than 50 words in the '642 Patent's claims are indefinite under 35 U.S.C. §112, ¶2, now 35 U.S.C. §112(b). "Definiteness, is a question of law ... and can be properly resolved on

- 18 -

summary judgment[.]" *Spa Syspatronic AG v. United States*, 117 Fed. Cl. 375, 384 (2014)(internal citations omitted). The Supreme Court noted that it reads a patent's claims "viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014). NPZ contends that there is no question that the claims of the '462 Patent are understood by those skilled in the art. NPZ cites to deposition testimony where both Mr. Stephens and Mr. Hastings, SVS's technical expert, consider themselves to be persons skilled in the art and they admit they understand the claims of the '462 Patent. NPZ points out that SVS's attorneys have presented an indefiniteness argument after this Court's *Markman* claim construction hearing, where SVS only alleged the term "selectively" was indefinite. NPZ maintains that the Supreme Court in *Nautilus, Inc.* warned against this type of *post hoc* legal analysis. *Id.*, 134 S.Ct. at 2130.

SVS contends that NPZ's evidence regarding its position consists of a series of "vague questions" during the depositions of Mr. Stephens and Mr. Hastings. (ECF No. 103 at 13). SVS maintains that NPZ failed to ask the relevant question of whether the claims "viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." (ECF No. 103 (citing *Nautilus, Inc.*, 134 S. Ct. at 2129)).

The Court holds that these claim terms are not indefinite as a matter of law. Mr. Hastings and Mr. Stephens, both persons skilled in the art, affirmatively stated in their deposition testimony that none of the words in the claims were indefinite. The Court agrees that there are no "magic words" for asking persons skilled in the art regarding indefiniteness. The Court holds that language used to question Mr. Hastings and Mr. Stephens was clear and unambiguous. Therefore, the Court enters judgment in favor of NPZ on SVS's claim of indefiniteness.

- 19 -

## C. Unclean Hands

SVS's defense of unclean hands relies on an assertion that Mr. Stephens created the two-way trigger system first, and then Mr. Ziegmann learned about it and did not independently create the animal trap of the '642 patent. SVS argues that Marty Smith told Mr. Ziegmann about a two way trigger. (ECF No. 89 at 15). However, Mr. Ziegmann testified that he did not meet Mr. Smith until 2010, which was well after Mr. Ziegmann filed his own patent application for his two-way trigger system. (*Id.*) NPZ argues that, absent any evidence of unclean hands, summary judgment should be entered as to SVS's defense of unclean hands.

SVS does not respond to NPZ's unclean hands argument. The Court agrees that SVS has not put forth any evidence to support its unclean hands argument and, therefore enters summary judgment in favor of NPZ as to that defense.

## III. Daubert Motion

### A. Standard of Review

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*See Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation omitted). In *Daubert*, the Supreme Court explained that in examining an expert's opinions for admissibility, trial courts should consider the following criteria: (1) whether

the theory being offered by the expert has been tested; (2) whether the theory has been subjected to peer review, publication, or analysis by others considered experts in the field; (3) whether the theory has a "known or potential rate of error"; and (4) whether the theory has been generally accepted by others in the field. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94, 113 S. Ct. 2786, 2796-97 (1993). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796). "'The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008) (quoting *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997)).

## B. Discussion

### 1. List of Publications

NPZ seeks to strike Mr. Hastings as an expert in this case.[7] First, NPZ contends that Hastings failed to provide a written report that complied with Fed.R.Civ.P. 26(a)(2) because he did not provide a list of all publications authored in the previous 10 years, as required by Fed.R.Civ.P. 26(a)(2)(B). In addition, Mr. Hastings did not provide his incomplete list of publications until two months after he gave his report and on the eve of Mr. Hastings' deposition.

In response, SVS contends that Mr. Hastings fully complied with Rule 26(a)(2)(B). (ECF No. 100 at 4-8). SVS states that Mr. Hastings' initial report set forth his opinions and the bases thereof, as well as his qualifications, including being the editor for various trapping magazines and his authorship of numerous articles relating to trapping. (ECF No. 100 at 4). SVS claims

---

[7] NPZ also argues that Mr. Hastings improperly relied on the uncorroborated testimony of Mr. Hill and Mr. Stephen as the basis for his finding that the asserted '642 Patent claims were anticipated and, thus, invalid under 35 U.S.C. §102. This Court already addressed this point on NPZ's motion for summary judgment and does not repeat that discussion here.

that by indicating that Mr. Hastings was the author of articles related to the trapping industry, NPZ was on notice that such publications existed at the time of his initial report. SVS claims that this provided NPZ with the opportunity to investigate Mr. Hastings' articles and to mitigate any alleged damage by asking SVS for more information about those publications. SVS claims that any untimeliness in disclosing the list of articles was justified because the list of articles was unavailable at the time of Mr. Hastings' initial report, but was provided to opposing counsel immediately when it became available prior to Mr. Hastings' deposition. SVS also maintains that NPZ was not prejudiced by the alleged untimeliness of Mr. Hastings' list of publications because NPZ was on notice that the publications existed and NPZ was provided with the list prior to Mr. Hastings' deposition. SVS asserts that NPZ knew Mr. Hastings had written trapping-related articles when it received his initial report, had the list of publications prior to his deposition, and had a copy of at least one particularly-relevant article authored by Mr. Hastings at his deposition. Nevertheless, SVS points out that NPZ never questioned Mr. Hastings about the substance of any of his articles on the list or whether any relevant publications were omitted from the list. Rather, Mr. Hastings told NPZ that he had excluded editorial articles from the list that were regular monthly inclusions to his own magazine; Mr. Hastings testified that he "felt it not necessary to include those" given the number of editorials he wrote. (ECF No. 100 at 5-6). SVS claims that these articles do not relate to his qualifications as a witness and, therefore, were not necessary to include, and did not prejudice NPZ.

The Court recognizes the obligation of each party "to supplement information included in an expert's report or given during an expert's deposition 'if the party learns that in some material respect the disclosure or response is incomplete or incorrect.'" *Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1062 (D.S.D. 2010)(quoting Fed.R.Civ.P. 26(e)). However, one of

the things that the Court can consider when determining whether to exclude expert testimony is "the potential prejudice created by permitting use of the expert testimony at trial or on a pending motion." *Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1063 (D.S.D. 2010)(citing *Citizens Bank of Batesville, Arkansas v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994)). Here, NPZ has not demonstrated any prejudice by allowing Mr. Hastings to serve as an expert even though he has not disclosed some editorial articles. NPZ has not identified any questions that it would have asked of Mr. Hastings or any articles that are in conflict with his proposed expert testimony. Further, the Court believes that striking Mr. Hastings' testimony for based upon his failure to provide some articles that appear to be only marginally, if at all, relevant to case at hand to be too harsh. Therefore, the Court will deny NPZ's *Daubert* motion based upon Mr. Hastings' alleged noncompliance with Rule 26.

2. Use of Hindsight

Second, NPZ contends that Mr. Hastings applied a flawed methodology in his determination that it would have been obvious to include a two-way trigger structure on the Lil' Grizz dogproof trap disclosed in the Bonnot '787 Patent. In particular, NPZ asserts Mr. Hastings improperly relied upon hindsight in his obviousness determination and failed to consider secondary indicia of non-obviousness, such as the success of the traps, as required by the Supreme Court in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1965).

SVS claims that NPZ led Mr. Hastings, a non-professional witness who is also not an expert in patent law (ECF No. 91-4 at 1), into saying that his assessment of the prior art "had the benefit of some hindsight." (ECF No. 100 at 10). SVS contends that Mr. Hastings merely meant that he was "looking at past events from his vantage point in the future" and nothing nefarious should be inferred from his statement. SVS notes that Mr. Hastings provided reasons why a "person of

- 23 -

ordinary skill in the art" would have modified the Lil' Grizz to include a two-way trigger, without the use of hindsight. Mr. Hastings pointed to the Conibear-style, Belisle traps, and Bonnot trap and how such a design was incorporated into the Coon Cuff dog-proof traps. (ECF No. 100 at 11). Mr. Hastings also identified additional prior art traps that differed from the Conibear and Belisle traps but had push and pull triggers. Mr. Hastings also relies upon the fact that three different people, Mr. Stephens, Mr. Hill, and Mr. Ziegmann, state that they modified the Lil' Grizz with a two-way trigger. In addition, SVS counters that Mr. Hastings did consider secondary indicia of non-obviousness. Mr. Hastings discussed whether there was a long-felt, but unmet, need for the traps invented and about the commercial success of the Ztrap as well as other, similar traps. (ECF No. 100 at 15-16).

"[T]he great challenge of the obviousness judgment is proceeding without any hint of hindsight." *Star Scientific, Inc.*, 655 F.3d at 1375; *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 546 (Fed. Cir. 1998) (observing that obviousness "cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention"). The Court holds that, although Mr. Hastings' word choice was inartful, his opinion was not biased by hindsight. Although, after being led by counsel, Mr. Hastings stated that he used hindsight, it does not appear that he "allow[ed] hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1368 (Fed. Cir. 2012). Rather, it appears from his reports that Mr. Hastings has offered an opinion regarding why a person having ordinary skill in the art would combine the prior art to obtain the disclosed invention. *Kinetic Concepts, Inc.*, 688 F.3d at 1369. Mr. Hastings methodically outlined the features of the traps in existence at the time as well as the

- 24 -

availability of the two-way trigger system to provide his expert opinion regarding obviousness. (ECF No. 91-4 at 2-3). The Court will allow the jury to consider Mr. Hasting's opinion when the jury makes its factual determination regarding obviousness. *See Kinetic Concepts, Inc.*, 688 F.3d at 1362 (jury can make credibility determinations where there is conflicting expert testimony).

In addition, the Court holds that Mr. Hastings' report details his consideration of appropriate secondary indicia of non-obviousness. Mr. Hastings considered that three people separately and independently modified the Lil' Grizz to make it a two-way trigger. (ECF No. 91-4 at 3). Mr. Hastings also discussed the commercial success of all of the two-way trigger traps. (ECF No. 91-4 at 4). Therefore, the Court finds no basis for striking Mr. Hastings' report for failure to consider secondary indicia of non-obviousness.

## IV. Motion for Ruling on Establishing Order of Proofs at Trial

NPZ filed a Motion for Ruling on Establishing Order of Proofs at Trial on August 14, 2014. SVS's counsel never responded to this Motion. In fact, shortly after the Motion was filed, SVS filed a Motion to Withdraw as counsel. (ECF No. 106). The Court currently has two motions to withdraw as counsel by SVS's counsel under consideration. *See* ECF Nos. 113, 114. Given that this Motion affects the trial procedure, the Court believes it would be prudent to have SVS's trial counsel, whoever that may be, respond to this Motion. Therefore, the Court will deny, without prejudice, NPZ's Motion for Ruling on Establishing Order of Proofs at Trial. Once SVS's trial counsel is determined, NPZ can refile this Motion, if necessary, for consideration by the Court with legal argument from both sides.

Accordingly,

**IT IS HEREBY ORDERED** that Sudden Valley Supply LLC's (SVS) Motion for Partial Summary Judgment of Non-Infringement (ECF No. 85) is **DENIED, in part, and**

**GRANTED, in part**. The Court holds that Claims 6 and 18-19 are not infringed as a matter of law.

**IT IS FURTHER ORDERED** that Counterclaim-Plaintiffs Neil P. Ziegmann and N.P.Z., Inc.'s Motion for Partial Summary Judgment (ECF No. 88) is **DENIED, in part, and GRANTED, in part**. The Court enters summary judgment in favor of Neil P. Ziegmann and N.P.Z., Inc. on Sudden Valley's assertion the '642 Patent's claims are indefinite under 35 U.S.C. §112, ¶2, now 35 U.S.C. §112(b). The Court also enters judgment in favor of Neil P. Ziegmann and N.P.Z., Inc. as to Sudden Valley's defense of unclean hands.

**IT IS FURTHER ORDERED** that Neil P. Ziegmann and N.P.Z., Inc.'s Motion to Exclude the Opinions and Testimony of David C. Hastings (ECF No. 90) is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant/Counterclaim-Plaintiffs Neil P. Ziegmann and N.P.Z., Inc.'s Motion for an Order Establishing the Order of Proof at Trial (ECF No. 97) is **DENIED** without prejudice. The Court will address this issue, if necessary, once SVS's trial counsel is determined.

Dated this 9th day of March, 2015.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**